UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JENNIFER FLEECE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:06-cv-1597-DFH-TAB |
| ) | |
| BFS DIVERSIFIED, LLC d/b/a ) | |
| FIRESTONE INDUSTRIAL ) | |
| PRODUCTS COMPANY, ] | |
| ] | |
| Defendant. ) | |

ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Defendant BFS Diversified Products, LLC terminated the employment of plaintiff Jennifer Fleece for excessive absenteeism.  Fleece has sued BFS Diversified for alleged violation of her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*  The FMLA requires covered employers to allow covered employees up to twelve work weeks per year of unpaid leave for covered purposes relating to medical and family needs.  The FMLA covers employees who have been employed by the employer for at least one year.  This case presents an unusual twist on the FMLA, however, and what seems to be a question of first impression.  BFS Diversified provides up to twelve weeks per year of family and medical leave for all employees, including those in their first year of employment before the statutory FMLA protections apply. Plaintiff Fleece used up nearly all twelve weeks of family and medical leave during her first year of

employment with BFS Diversified. She was absent a few more days just after her one-year anniversary with the company, and the company fired her for excessive absenteeism.

The narrow question of first impression is whether an employer may count toward an employee's FMLA leave her absences taken under an employer's family and medical leave policy that is more generous than the FMLA requires by covering employees during their first year of employment. Fleece argues that the family and medical leave she used during her first year should not count against her because it was not leave under the statute itself, so that she was entitled to a fresh start under the statute upon her first anniversary. Both parties have moved for summary judgment. As discussed in detail below, the court denies both parties' motions for summary judgment on the FMLA claim.[1]

## Summary Judgment Standard

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment must be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

---

[1] Fleece also asserted a claim under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, but she has abandoned that claim in response to the defendant's motion for summary judgment. Pl. Br. 2 n.2.

as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The motion should be granted so long as no rational fact finder could return a verdict in favor of the non-moving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court's ruling on a motion for summary judgment is akin to that on a motion for a directed verdict. The question for the court in both is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. Only genuine disputes over material facts can prevent a grant of summary judgment. *Id.* at 247-48. A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Id.* at 248.

When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the non-moving party. See Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 255. However, a party must present more than mere speculation or conjecture to defeat a summary judgment motion. The issue is whether a reasonable jury might rule in favor of the non-moving party based on the evidence in the record. *Anderson*, 477 U.S. at 251-52.

The fact that both sides have filed motions for summary judgment does not alter the applicable standard; the court must consider each motion independently and must deny both motions if there is a genuine issue of material fact. *E.g.*, *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993); *Harms v. Laboratory Corp. of America*, 155 F. Supp. 2d 891, 905-06 (N.D. Ill. 2001). Thus, in considering cross-motions for summary judgment, the court must consider the evidence through two lenses. When considering Fleece's motion for summary judgment, the court must give BFS Diversified the benefit of all conflicts in the evidence and the benefit of all reasonable inferences that might be drawn from the evidence in its favor. When considering BFS Diversified's motion for summary judgment, the roles are reversed.

Under this court's Local Rule 7.1(c), a brief in support of a motion for summary judgment or any other motion is limited to 35 pages (exclusive of table of contents, table of authorities, and appendices), except by permission of the court. Defendant filed a 35-page brief and included as an "appendix" a 17-page statement of material facts not in dispute. Using a separate appendix for avoiding the 35-page limit is not appropriate and is not consistent with Local Rule 56.1(a), which provides that the brief "must include a section labeled 'Statement of Material Facts Not in Dispute.'" The 2002 amendment of Local Rule 56.1 abandoned this court's earlier experiment with separate statements of material facts. The notes of the local rules advisory committee explained that the 2002 amendment was

> designed to reduce the length of briefs related to motions for summary judgment, particularly the statement of undisputed material facts. In some cases, the statement of undisputed material facts has grown to an unmanageable level for the courts and for the parties. The parties have included facts which are not material to the legal issues to be resolved by summary judgment. Including the statement of undisputed material facts in the 35-page limit for initial briefs established by S.D. Ind. L.R. 7.1(b) [now 7.1(c)] will require the parties to discipline their presentation.

The court understands defendant's explanation that other districts may permit, encourage, or even require such separate statements, but this district's experiment with the separate statements was not a happy one. The court will not take further action in this case, though, exercising its discretion, in the interests of justice, to overlook harmless failures to comply with the local rules. The extra volume defendant gained by the appendix device was devoted to matters upon which the court has not based its decision, including the ADA claim that plaintiff has abandoned, so defendant gained no unfair advantage.

*Facts for Summary Judgment*

Jennifer Fleece began working as a parts builder for BFS Diversified on June 21, 2004. As an hourly employee, her employment was governed by the collective bargaining agreement between BFS Diversified and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union. The FMLA requires an employer to provide unpaid family and medical leave to employees whom it has employed for at least twelve months and who have worked at least 1,250 hours for the employer during the

previous twelve-month period.  29 U.S.C. § 2611(2).  However, under the collective bargaining agreement, BFS Diversified made twelve weeks per year of family and medical leave available to all hourly employees immediately upon hire.

Under BFS Diversified's attendance policy for hourly employees, employees accrue points for every absence other than those categories of absences listed as exceptions in the policy.  When an employee accumulates five absences in a nine-month period, she triggers a series of warnings and reprimands that can culminate in termination.  Fleece Dep. Ex. 5 at 1-2.  The list of categories of absences that do not count as absence incidents includes:  "Qualified Absence in Accordance with Federal/State Law (or for an FMLA Qualifying Reason during the first year of employment regardless of the One Year's Service and/or 1250 Hours Requirements)."  *Id.* at 3.  At her orientation, Fleece received a copy of the collective bargaining agreement, a handbook, and various company policies, including information about Accident and Sickness Leave, leaves of absence, and attendance.  Fleece Dep. 70-75.

From July 2004 to June 2005, Fleece accrued 162.9 hours of unexcused absences.  Her supervisors disciplined her for poor attendance on February 2, April 13, and May 3, 2005.  Fleece Dep. Exs. 8-11.  Her supervisors warned her in April and May 2005 that she would be terminated for any additional unexcused absences prior to January 2006.  See Fleece Dep. Ex. 11.

On July 16, 2004, Fleece applied to take intermittent family/medical leave due to her son's cerebral palsy. Fleece Dep. Ex. 21 at 2. She filled out a U.S. Department of Labor FMLA form requesting the leave. On August 6, 2004, BFS Diversified approved the request for intermittent leave through August 4, 2005 and informed her that any leave she took would be counted against her annual FMLA leave entitlement. *Id.* BFS Diversified used the twelve month rolling-back calculation method to determine how much FMLA leave time an employee had accrued. Under this method, an employee could not take more than 504 hours (equal to twelve weeks based on the work schedule of the plant) of family and medical leave in any twelve month period. From September 1, 2004 to August 16, 2005, Fleece took 486 hours of family and medical leave. Fleece Dep. Ex. 19. On August 18, 2005, BFS Diversified notified Fleece by certified letter that she had used 486 hours during a twelve month period and provided her with a copy of her attendance record. Fleece Dep. Ex. 16.

The parties now dispute the truthfulness of many of Fleece's claims that her absences were FMLA-qualifying. BFS Diversified has presented evidence that Fleece's son resided in Vernon Manor nursing home from May 13, 2004 to April 15, 2005. During that time period, Fleece was absent from work on many occasions and claimed to be caring for her son. The Vernon Manor records indicate that Fleece did not visit her son, take him to a medical appointment, or provide care for him on many of those dates. Snyder Aff., Ex. A; Scanlon Aff., Ex. A.

After August 18, 2005, Fleece missed additional work-time on three occasions. On August 23, 2005, she took six hours of family and medical leave. She was absent for 8.3 hours on August 28, 2005. Finally, she was absent for four hours from her September 4, 2005 shift. Fleece Dep. Ex. 19. The parties dispute the reason for Fleece's absence on September 4th.[2] Fleece testified that her son's nurse called her at 8:00 p.m. on September 4th and continued calling until 3:00 a.m. on September 5th because of a problem with her son's feeding tube that prevented him from eating. She stated that the nurse was hysterical when she got in touch with her and that she had to leave work. Fleece Dep. 227. BFS Diversified provided an affidavit from Lynn Estell, the administrator of Advantage Home Care, the agency from which Fleece procured nursing services for her son. Estell provided a copy of the records of Janet Jackson, the nurse who cared for Fleece's son, from September 3-5, 2005. The records show that at 8:00 p.m. on September 3, nurse Jackson notified Fleece that there was a problem with the feeding tube and that the nurse subsequently administered a bolus feeding. The boy then slept on and off throughout the night, until 7:15 a.m. when his mother came home. Estell Aff. Attachment B at 2-4. The records do not

---

[2]BFS Diversified moved to strike a portion of Fleece's surreply on the basis that it was not limited to discussing new evidence or objections raised in the defendant's reply brief. Docket No. 45, discussing S.D. Ind. Local Rule 56.1(d). The relevant portion of Fleece's surreply discussed the reason for Fleece's absence on September 4, 2005. The two paragraphs defendant has moved to strike point out that plaintiff has not conceded that the absence was unprotected by the FMLA, contrary to defendant's assertion. The court denies the motion to strike that portion of plaintiff's surreply brief.

indicate the nurse had any problems with Fleece's son on the night of September 4-5th.

BFS Diversified determined that two of the hours on August 28th and the four hours during her September 4th shift did not qualify as FMLA leave because Fleece had exhausted her family and medical leave allowance of 504 hours for the twelve month period. BFS Diversified therefore considered these absences unexcused absences, which pushed Fleece's unexcused absences beyond the permissible points under the attendance point system. On September 12, 2005, Fleece was notified that she had been terminated for violating the attendance policy. Fleece Dep. 95-96.

*Discussion*

Plaintiff Fleece argues that BFS Diversified violated the FMLA when it did not count her August 28 and September 4, 2005 absences as FMLA leave. She points out correctly that employees are not eligible for FMLA leave under the Act itself until they have been employed by the employer for at least twelve months. 29 U.S.C. § 2611(2)(A). Because Fleece was not eligible for FMLA leave until June 2005, she reasons, her absences to care for her son before that date could not actually have been FMLA leave under the Act itself, regardless of how BFS Diversified classified the leave internally. By this logic, Fleece concludes that she was entitled to a fresh twelve weeks of FMLA leave beginning with her one-year anniversary in June 2005, so that she had ample FMLA leave remaining in September 2005.

Employers are not required by the FMLA to provide family and medical leave until an employee has been employed with the employer for at least 1,250 hours in one year. Courts consistently have denied claims under the FMLA by employees who have not met this eligibility requirement for FMLA leave. See *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579, 582 (7th Cir. 2000) (affirming summary judgment for employer on FMLA claim where employee had not worked 1,250 hours); *Dolese v. Office Depot, Inc.*, 231 F.3d 202, 203 (5th Cir. 2000) (affirming summary judgment for employer on FMLA claim where employer's policy was more generous than FMLA required and employee did not meet

-10-

statutory eligibility requirements; employer's more generous policy was not enforceable directly under the FMLA); *Pirant v. United States Postal Service*, 2006 WL 3590072, at *8 (N.D. Ill. Dec. 7, 2006) (granting summary judgment for employer on FMLA claim where employee had worked only 1248.8 hours).

The language of the FMLA and its legislative history show that the twelve month and 1,250 hour requirements for eligibility were a critical part of the legislative compromise between the interests of employees and employers. See 139 Cong. Rec. H396-03, at 398 (Feb. 3, 1993) (statement of Rep. Roemer) (noting that the twelve month employment requirement protected the interests of employers). However, this case presents a novel issue: does the FMLA require an employer who has provided family and medical leave during the first twelve months of an employee's employment to provide an additional twelve work weeks of leave once the employee reaches her one-year anniversary of employment?

The FMLA makes it clear that it provides minimum leave requirements and does not prevent employers from crafting leave policies that are more generous. The statute also provides: "Nothing in this Act or any amendment made by this Act shall be construed to discourage employers from adopting or retaining leave policies more generous than any policies that comply with the requirements under this Act or any amendment made by this Act." 29 U.S.C. § 2653. The FMLA also provides that a collective bargaining agreement cannot diminish the rights employees have under the FMLA. 29 U.S.C. § 2652(b). Similarly, the FMLA's

implementing regulations state that employers must observe employment benefit programs that provide more generous family or medical leave rights to employees, and that employees' rights under the FMLA cannot be diminished by any employment benefit program. 29 C.F.R. § 825.700(a).

In *Ragsdale v. Wolverine World Wide Inc.*, 535 U.S. 81 (2002), the Supreme Court considered the portion of 29 C.F.R. § 825.700(a) that states: "If an employee takes paid or unpaid leave and the employer does not designate the leave as FMLA leave, the leave taken does not count against an employee's FMLA entitlement." The Court held this part of the regulation was invalid because it was contrary to the FMLA and beyond the authority of the Secretary of Labor to promulgate. *Id.* at 96.[3]

The Court explained that the regulation was in tension with the Act's admonition that it not be construed to discourage employers from adopting more generous policies than the Act requires. *Id.* at 95, citing 29 U.S.C. § 2653. The Court stated that penalizing an employer for not designating leave as FMLA-qualifying would impose a "high price" on employers who provided leave for reasons that were not FMLA-qualifying or to employees who were not yet eligible for FMLA leave because the decision about how to classify the leave might require

---

[3]The Court did not invalidate the portion of the regulation that requires employers to adhere to plans that provide more generous leave than the FMLA but does not allow them to follow plans that diminish the rights of employees under the FMLA.

substantial investigation on the part of those employers. *Id.* at 96. An employer would face the harsh consequence of having to provide an additional twelve work weeks of leave in the event that it designated the leave incorrectly. In contrast, an employer who provided only the minimum required leave would be able to designate all leave as FMLA leave with no effort. *Id.* at 96. The Court feared that more generous employers might conclude that it was safer to choose the simpler, less generous alternative of providing only the minimum requirements under the FMLA. *Id.*

The Court cited a statement from the Secretary of Labor during the period in which the FMLA was first implemented as evidence of the difficulty an employer might have classifying correctly what type of leave an employee had taken. *Id.* at 96, citing 60 Fed. Reg. 2230 (1995). The Secretary of Labor had noted that several commenters had inquired about whether leave taken under more generous family and medical leave policies than the FMLA requires may be counted against an employee's twelve week FMLA entitlement. The commenters specifically asked whether leave taken by employees who were not yet eligible for FMLA leave would count against their twelve week leave entitlement under the FMLA. The Secretary of Labor answered: "Leave granted under circumstances that do not meet FMLA's coverage, eligibility, or specified reasons for FMLA-qualifying leave may not be counted against FMLA's 12-week entitlement." 60 Fed. Reg. 2230. This statement provides significant support for Fleece's argument that she was entitled to a fresh twelve weeks of FMLA leave once she met the eligibility requirements of the Act.

On the other hand, there is a strong argument in favor of defendant. BFS Diversified's policy that eliminates the twelve month employment eligibility requirement for family and medical leave is more generous than what is required by the FMLA. The evidence indicates that BFS Diversified's family and medical leave policy provided precisely what the FMLA requires, but simply provided it to employees immediately upon hire. Fleece testified that she submitted an FMLA request and asked her son's doctor to complete FMLA paperwork just a few months after she began her employment because "they told me you could get FMLA before the year. You don't have to have the year." Fleece Dep. 87. Fleece understood the policy and benefitted from it on many occasions. Without the benefit of BFS Diversified's policy, she would have been fired for absenteeism after just a few months on (and off) the job.

The FMLA does not create an entitlement to more than twelve weeks of family and medical leave in any twelve-month period. 29 U.S.C. § 2612(a)(1) ("an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following" covered purposes); accord, 29 C.F.R. § 825.200 (rules for "rolling" periods of twelve months to calculate FMLA rights). Under Fleece's interpretation of the FMLA, the combination of the collective bargaining agreement and the FMLA would have produced an entitlement on her part to take 24 weeks of medical leave within a period of as little as six months (the last three months of her first year with the employer, and the first three months of her second year). That interpretation of the FMLA would

effectively discourage employers like BFS Diversified from providing the more generous coverage for employees during their first year of employment. That result would be in tension with 29 U.S.C. § 2653 and the purposes of the FMLA, though it seems to be consistent with the Secretary of Labor's statement from 1995.

The novel question of law that this case presents might not be controlling. As discussed above, the parties dispute whether Fleece's absence on September 4, 2005 was for an FMLA-qualifying reason. If Fleece's absence on that date was not FMLA-qualifying, BFS Diversified was justified in terminating her employment based on excessive absences under its attendance policy. If Fleece's absence on September 4 was for an FMLA-qualifying reason, the court would need to determine whether Fleece had exceeded her FMLA leave on September 4, 2005, which would require the court to make a definite choice between the parties' interpretation of the FMLA as applied to BFS Diversified's policy.

In light of this factual dispute, the court denies both parties' motions for summary judgment at this time. The case will proceed to a jury trial to determine whether Fleece's absence on September 4, 2005 was for an FMLA-qualifying reason, and if so, for a calculation of damages under the FMLA. If the jury determines that the absence was for an FMLA-qualifying reason, the court will permit additional briefing by the parties and would welcome especially the perspective of the United States Department of Labor on the issue of whether

family or medical leave granted to employees who are not yet eligible for FMLA leave should be counted against the employees' entitlement to twelve work weeks of leave under the FMLA. A copy of this entry shall be sent to the United States Attorney for forwarding to the Department of Labor.

So ordered.

Date: May 2, 2008

                                                                      
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Kim F. Ebert
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
kim.ebert@ogletreedeakins.com

Philip J. Gibbons Jr.
GIBBONS JONES, P.C.
pgibbons@gibbonsjones.com

Andrew G. Jones
GIBBONS JONES P.C.
ajones@gibbonsjones.com

Jan S. Michelsen
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
jan.michelsen@odnss.com

Timothy Morrison
OFFICE OF THE UNITED STATES ATTORNEY
10 West Market Street, Suite 2100
Indianapolis, Indiana  46204-3048